[No. 27044. Department One. November 3, 1938.]

ANNA NORMAN, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 83 P. (2d) 895.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*John Geisness,* for respondent.

Main, J.—This is an appeal from a judgment of the superior court reversing an order of the department of labor and industries denying a widow's claim.

The facts may be summarized as follows: The Snoqualmie Lumber Company was conducting logging operations near the town of Snoqualmie, in King county. One Anton Norman went to work as a bucker for the logging company June 12, 1933. June 14th, while working upon a log as a bucker, he was about thirty feet back of one Fred Fredin, who was a faller. In advance of this crew, there was another similar crew. The forward crew felled a large fir tree, which dropped between where Norman and Fredin were working. When it started to fall, they shouted a warning. As the tree came down, from other trees which it encountered came tops, bark, and limbs. Fredin escaped from danger, but was only able to reach a point about twenty feet from where the tree fell. Norman was not seen for about thirty minutes, when, as Fredin testified, he was seen sitting on a log holding his head in his hands, and he said something to the effect that he thought he had been badly hurt. The evidence negatives any cause of his injury other than its having been caused as the result of the falling tree encountering other trees and bringing down limbs and bark.

Norman then went to camp and returned about two o'clock, but did not go to work. He stayed about the camp for a couple of days, then he returned to his home at Foster. When he returned, his condition was

very much changed. Formerly, he had been a placid and ordinary acting person, but upon his return he was irritable and nervous. While he was at home for a few days, he repeatedly held his sides with his hands. On the twenty-first, his condition became such that he was sent to Harborview hospital, in Seattle. While there, he became violent, and on the following day, the twenty-second, was committed to the asylum for the insane, where he died June 28, 1933. After his death, an autopsy was performed, which showed that there had been two broken ribs, an injured kidney, and other internal injuries. After he returned to his home from camp, he passed blood in his urine. The autopsy surgeon testified that it was his belief that the accident which caused the internal injuries had not happened within the last four or five days, because the healing process had set in.

Subsequently, Anna Norman, the widow of the deceased, presented to the department a claim for pension, with the result as above stated.

When the matter came on for hearing in the superior court, it was stipulated that, if the evidence offered by the claimant was sufficient to make a *prima facie* case for the consideration of a jury, if a jury had been in attendance to hear the evidence, then the judgment of the department should be reversed, but that, if the evidence was not sufficient to take the case to a jury, the order of the department should be affirmed and the claim dismissed.

No evidence was taken in the superior court, and the case was heard there entirely upon the evidence offered by the claimant in the department. As we view this evidence, without reciting it here in detail, it was sufficient, had the case been tried to the jury, to make a *prima facie* showing of injury while engaged in extrahazardous employment, and the jury

would have been justified in finding that the death was reasonably inferable from that injury. It is true that, when Norman went to the Harborview hospital, he was examined by a physician there, and this physician testified that he found no evidence of external injury; but that evidence does not militate against the question being one for the jury to determine, had there been such a trial.

The judgment appealed from will be affirmed.

STEINERT, C. J., BLAKE, HOLCOMB, and ROBINSON, JJ., concur.

